**CHICAGO INSURANCE COMPANY**
v.
**Robert E. CAMORS; Sharyl Jean Camors; Colonel Homer B. Sarver; Virginia Sarver; Cindy Sarver, a minor; Charles H. Chambers; Mrs. Charles H. Chambers; Ellis Wayne Cooper; Charles Wallace; Daniel Jennings Cooper, a minor; Wallace Insurance Agency, Inc.; and St. Paul Fire and Marine Insurance Company.**

Civ. A. No. 11002.

United States District Court
N. D. Georgia,
Atlanta Division.

March 6, 1969.

Nall, Miller, Cadenhead & Dennis, Atlanta, Ga., for plaintiff.

Northcutt, Edwards & Doss, Atlanta, Ga., for first five defendants—Camors & Sarver.

Hurt, Hill & Richardson, Atlanta, Ga., for Mr. & Mrs. Chambers.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for St. Paul.

No attorneys of record for defendants E. Cooper, C. Wallace, D. Cooper & Wallace Ins. Agency.

## OPINION

EDENFIELD, District Judge.

The plaintiff in this case seeks a declaration of rights under two insurance policies, one as to its coverage and liability under a policy of liability insurance issued to defendant Chambers, and the other as to its right to indemnity (in

the event it is found liable to Chambers) from an "errors and omissions" policy issued by defendant St. Paul Fire and Marine Insurance Company (hereinafter referred to as St. Paul) to plaintiff's bankrupt agent, Charles Wallace, based on the alleged negligence of such agent in causing it (plaintiff) to be exposed on the Chambers policy.

By way of cross-action against defendants Wallace and St. Paul, defendant Chambers also alleges that if it should be found that he has no coverage with plaintiff, such result is due solely to the negligence of the agent, Wallace, in causing his coverage to be lost. He therefore prays that if it be determined that he has no coverage, the court then declare his right to indemnity against Wallace and his right to satisfy such claim for indemnity against St. Paul under its "errors and omissions" policy issued in Wallace's favor.

A demand for jury trial has been withdrawn and the case is submitted to the court on all issues without the intervention of a jury.

The court finds that the facts of the case developed in the following chronological sequence: The plaintiff, Chicago Insurance Company, does business through a general agent, J. D. Ambrose & Company, and on November 6, 1964, through an Ambrose sub-agent, Charles Wallace, the plaintiff issued a renewal policy of automobile liability insurance covering defendant Charles Chambers and his wife. The premium on this policy was not paid by Chambers when the policy was issued, it being understood or implied that Chambers would have sixty days to remit the premium to the sub-agent, Wallace. This was of no concern to the plaintiff or to its general agent, Ambrose, however, since under their accounting system they merely charged the premium to the sub-agent and settled with him for all policies at periodic intervals. The general agent, Ambrose, had been having some difficulties in dealing with the sub-agent, Wallace, and during the month of December decided to cancel a number of policies issued by Wallace, not because the premiums had not been paid, but because of general dissatisfaction with his agency. Pursuant to this policy, Ambrose, as general agent of the plaintiff, mailed to defendant Chambers a notice of cancellation of his policy, to become effective at 12:01 A.M. on December 23, 1964.

Upon receipt of this notice, defendant Chambers made a telephone call to the office of the general agent, Ambrose, to inquire about the cancellation. The name of the person answering Ambrose's telephone was and is unknown to defendant Chambers, but such person was familiar with the case and with the relationship and difficulties between Ambrose and Wallace. Chambers discussed the proposed cancellation with this person and was told or led to believe that the cancellation could be avoided and the policy reinstated if the premium were paid before December 23, the effective date of the proposed cancellation.[1]

Defendant Chambers then called Wallace, the sub-agent, from whom the policy had been purchased, and told him of the cancellation notice. Wallace in turn told him that if he would promptly pay the premium before the cancellation date, "you will have nothing to worry about." The invoice from Wallace to Chambers covering the premium due (which had been mailed to Chambers with the policy) was in the amount of $159.00. On December 21, two days before the cancellation date, Chambers

---

1. The court has serious question whether plaintiff or its general agent, Ambrose, could be bound by this telephone conversation had with an unidentified person in its office. Compare Planters Cotton Oil Co. v. Western Union Tel. Co., 126 Ga. 621, 55 S.E. 495, 6 L.R.A.,N.S., 1180, and Thruway Service v. Townsend, 116 Ga.App. 379(3), 157 S.E.2d 564; and see 29 Am.Jur.2d, Evidence, § 201. Fortunately, however, it makes no difference here since the liability of plaintiff is to be decided on an entirely different ground.

went to the home of Wallace and paid this premium by check, being told by Mrs. Wallace, who did clerical work for her husband, that she would deliver the check to Ambrose on her way to work the next day. Chambers and Mrs. Wallace, incidentally, are brother and sister.

The evidence is somewhat confused and conflicting as to whether at this point Wallace was attempting to have Chambers' policy reinstated or whether he undertook to procure other insurance for Chambers elsewhere. It is virtually undisputed, however, and the court finds, that the $159.00 which Chambers paid was in payment of the invoice for the Chicago Insurance Company policy. It is also undisputed that Wallace at this time held a written agency agreement from the plaintiff unconditionally authorizing him "to collect, receive and receipt for premiums on insurance * * *" for the plaintiff. It is also clear and the court so finds that both Wallace and Chambers understood that in some fashion, either by reinstatement of the Chicago Insurance Company policy or by purchasing insurance elsewhere, Chambers was to be afforded continuous coverage. On this point, Wallace testified that he subsequently made some efforts to place the insurance elsewhere but admitted that he "was still hoping Mr. J. D. [Ambrose] would change his mind * * *", apparently meaning that he still hoped the Chicago policy would be reinstated.

At the time of these occurrences the issuing agent, Wallace, had an "errors and omissions" policy issued by defendant St. Paul, obligating it to pay "on behalf of the insured [Wallace] [2] all sums which the insured shall become legally obligated to pay on account of any claim made against the insured and caused by any negligent act, error or omission of the insured * * * in the conduct of their business of general agents * * * including all claims involving the liability of the insured to any insurance company for whom the insured as an agent has issued a policy. * * *"

Nothing further occurred until January 12, 1965, when Mrs. Chambers, driving the family car, was involved in a collision in which numerous persons (also named as defendants in the case) were injured. Suits were filed against Mr. and Mrs. Chambers by these persons, plaintiff Chicago Insurance Company declined coverage and refused to defend them (on the ground that the policy had been cancelled) and thereafter the present suit was filed.

The policy issued by plaintiff to Chambers contained the usual provision that the terms of the policy could not be waived or changed except by endorsement issued to form a part of the policy. It also contained a provision that the policy might be cancelled by the company "by mailing to the insured * * * written notice stating when, not less than ten days thereafter, such cancellation shall be effective. * * *" The cancellation clause also provided that "the time of the surrender or the effective date and hour of the cancellation stated in the notice shall become the end of the policy period * * * [and that] if the company cancels earned premiums shall be computed pro rata." Finally it provided that "Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation."

2. A contention of St. Paul (apparently not seriously urged) is that its policy only covered Wallace as an individual, whereas the Chambers policy was issued by Wallace Insurance Agency, Inc., a corporation. But the evidence establishes and the court finds that Wallace dealt with Chambers as an individual. In fact the testimony of Wallace raises serious question as to whether the corporation was ever activated. Chambers never knew it existed. If it did exist, Wallace was its sole owner, stockholder and agent. If in the course of its affairs he was negligent, he would be individually liable in any event, and his "errors and omissions" policy would cover such liability.

No part of the unearned premium, amounting to $138.00, was ever refunded to Chambers, either by plaintiff or Ambrose or Wallace.

The issues in the case are, first, whether under the circumstances the attempted cancellation by plaintiff was effective so as to relieve the plaintiff of liability, and second, if not, whether plaintiff is entitled to recoup against St. Paul as the "errors and omissions" carrier for its negligent and bankrupt agent, Wallace.

The court concludes that the chief author of and actor in this comedy of errors was plaintiff's sub-agent, Wallace, and that by reason of his negligence he caused the attempted cancellation by Ambrose to be ineffective for failure to comply with the Georgia statute relating to cancellation. The court also concludes that because of these "errors and omissions" of Wallace in (a) accepting the premium from Chambers with knowledge that a cancellation notice had already been mailed to him by the general agent, Ambrose, and (b) in failing thereafter to refund the unearned portion of the premium, and (c) in failing to notify the plaintiff that the premium was in his possession so that plaintiff could itself make a refund, he became liable to plaintiff as his principal and that St. Paul as his insurance carrier must assume the loss.

The authority of an insurance company to cancel a policy of insurance must be strictly construed, Rabb v. Mutual Benefit Health & Accident Assn., 98 Ga.App. 193(1), 105 S.E.2d 396; see also 45 C.J.S. Insurance § 445; and applicable provisions of the policy, or of a statute which by law is made a part of the policy, must be strictly followed. 32 Corpus Juris, Insurance, § 434; New Amsterdam Cas. Co. v. Russell, 103 Ga. App. 553, 556, 120 S.E.2d 150; same case, 102 Ga.App. 597, 600, 602, 117 S. E.2d 239.

Prior to 1960, Georgia had no specific statute relating to cancellation of insurance policies, and the law at that time was expressed in Genone v. Citizens Ins. Co. of N. J., 207 Ga. 83, 60 S.E.2d 125 (1950), which held that "in the absence of a statutory requirement" and where, by the terms of the policy, the duty to return the unearned premium was made a "consequence and not a condition" of cancellation, a return of, or an offer to return, the unearned premium was not essential to cancellation. In other words, prior to 1960 the right to cancel and the obligation to refund unearned premiums was a matter of contract and was controlled by the provisions of the policy.

In 1960, however, Georgia adopted a new insurance code which became, by law, a part of every policy thereafter issued in this state,[3] and Section 2430 of this code (Ga.Code Ann. § 56–2430) provides:

"Cancellation of a policy which by its terms and conditions may be cancelled by the insurer *shall be accomplished as prescribed herein*: * * * such notice may or may not be accompanied by a tender of the unearned premium paid by the insured calculated on a pro rata basis. If such tender is not made simultaneously with such notice, *it shall be made within 15 days of notice of cancellation.* * * *."
(Emphasis added.)

The court construes the italicized language of this statute as mandatory and concludes that under it a failure to refund the unearned premium within 15 days renders the attempted cancellation ineffective.

Here, neither the insurer nor its agents made any effort to comply with this provision. In seeking to ex-

---

3. "Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and in case of conflict between the policy and the statutory provision, the latter shall control." Nelson v. Southern Guaranty Ins. Co., 221 Ga. 804, 807, 147 S.E.2d 424, 426 (1966); Gulf American Fire & Cas. Co. v. McNeal, 115 Ga.App. 286, 292, 154 S.E.2d 411 (1967).

cuse this omission, plaintiff strongly urges that its sub-agent, Wallace, had no authority to accept the premium in the first place, i. e., after notice of cancellation had been mailed. It also contends that if he had not erroneously accepted it, there would have been no unearned premium to be refunded and hence no failure to comply with the statute. This may be true; but the premium *was* accepted before the cancellation date, and by an agent who had express written authority from the plaintiff to "collect, receive and receipt" for it. Receipt by such an agent was, of course, receipt by the company (Life Ins. Co. of Va. v. Wood, 101 Ga.App. 661, 115 S.E.2d 240; Alliance Ins. Co. v. City Realty Co., D. C., 52 F.2d 271) and, without belaboring the point, it is clear that because of its agency agreement and the error, ignorance or negligence of its agent, plaintiff was placed in the position of violating and ignoring a mandatory statute, the consequences for which are clear.[4] Where, as here, both notice and return of unearned premium are essential to cancellation, either alone is insufficient. Compare Hollingsworth & Moraque v. The Germania Fire Ins. Co., 45 Ga. 294.

The court has even less difficulty in concluding that under all the circumstances, plaintiff, having been subjected to liability solely by the errors and omissions of its agent, is entitled to indem-

nity from him. Ga.Code § 4–203; Georgia S. & F. Ry. v. Jossey, 105 Ga. 271, 31 S.E. 179; Render & Hammett v. Hartford Fire Ins. Co., 33 Ga.App. 716, 127 S.E. 902; Hardeman v. Ford, 12 Ga. 205; Cave v. Lougee, 134 Ga. 135, 67 S.E. 667; Benton v. Roberts, 35 Ga.App. 749, 134 S.E. 846; Wren Mobile Homes, Inc. v. Midland-Guardian Co., 117 Ga. App. 22, 25, 159 S.E.2d 734. Being entitled to recover against the defaulting agent, plaintiff is likewise entitled to satisfy this claim from the agent's insurer, the errors and omissions policy having apparently been procured by Wallace with this very type of liability in mind.

Here, the company never intended that Wallace accept a premium under these circumstances. Because of his negligence or the inadequacy of the accounting system employed, they never knew he had accepted the premium after a cancellation notice was mailed, and had they known it, they most certainly would have made the refund or reinstated the policy. The court concludes that these acts of omission and commission were "errors and omissions" within the meaning of the policy, and that that company will, to the extent of its policy limits, be liable for any loss which may be occasioned to plaintiff.[5]

The parties may present a judgment in accordance with these findings and conclusions.

---

4. Incidentally, the court is also of the opinion that in failing to refund the unearned premium the company also failed to comply with the cancellation requirements of the policy itself. Thus, both the policy and the cancellation notice permit a premium adjustment (refund) to be made either at the time of cancellation or "as soon as practicable" thereafter. Here, it appears that the refund was never made at all. It would thus appear that by retaining the premium plaintiff had ratified any unauthorized acts of its agent and it is hence estopped to claim cancellation. Causey v. Gulf Life Ins. Co., 62 Ga.App. 378, 8 S.E.2d 535.

5. The court having concluded that plaintiff's policy was never effectively cancelled, has thus reached the conclusion that St. Paul, as the errors and omissions carrier, is liable to the plaintiff. The court might add that had it reached any other conclusion; that is, had the court concluded that the cancellation was effective, the court would then have had to grant similar relief against the errors and omissions carrier in favor of defendant Chambers, for clearly by the error, omission or negligence of Wallace, who was St. Paul's insured, Chambers would have been made to forfeit his liability coverage, thereby exposing him to the tort claims of the persons injured without the benefit of insurance.