69757. BSF, INC. v. CASON et al.
69758. CASON v. BSF, INC.
(333 SE2d 154)

BENHAM, Judge.

Plaintiff/appellee/cross-appellant Cason filed suit against BSF, Inc., and American National Fire Insurance Company ("American National") after the latter denied Cason's claim under a homeowner's insurance policy issued by American National through BSF, its agent. American National filed a cross-claim against BSF, seeking indemnification for any sums for which American National might be held liable. The trial court directed a verdict for American National on its cross-claim, and the jury returned a verdict for Cason, finding BSF negligent and American National in breach of contract.

After dismissing the jury, the trial court heard testimony in an effort to construe the personal property replacement cost rider of the insurance contract. The court found Cason to be entitled to $24,489.35, the actual cash value of the personal property lost but not replaced at the time of trial. The trial court also gave Cason 180 days from the date of the remittitur to replace any items not yet replaced and to submit a claim to the insurer for the difference between actual cash value and replacement cost.

In its appeal, BSF seeks review of the directed verdict on American National's cross-claim, the denial of its motion for directed verdict in the main action, several evidentiary and jury instruction rulings, and the trial court's interpretation of the replacement cost rider. In his cross-appeal, Cason also takes issue with the trial court's decision on the replacement cost rider.

1. It was not error to direct a verdict in favor of American National on its cross-claim. In the "Agency Company Agreement" entered into by BSF and American National, BSF agreed to conduct business on behalf of American National pursuant to the authority granted BSF by the agreement and in accordance with American National's underwriting rules and regulations. The regulations forbade BSF from binding coverage for any applicant whose insurance coverage had been cancelled by another company or who had had three or more insurance claims in the past three years. At trial there was evidence that Cason had told the BSF agent of his recent history of insurance claims and cancellation but that the agent had not recorded it on his application for homeowner's insurance because, Cason was told, it was inapplicable since it concerned a renter's insurance policy. There was uncontradicted evidence that American National would not have extended homeowner's coverage to Cason had it known the truth, and American National voided Cason's policy on the ground that Cason had failed to tell the BSF agent of his recent history of insurance claims and cancellation.

The jury verdict in favor of Cason established as fact Cason's testimony that he had been truthful with the BSF agent. Therefore, BSF was solely responsible for the damages under any of several theories: "Where the insurer is held liable as a result of the agent acting outside the scope of his employment, the agent is required to indemnify the insured. In the event that the agent improperly bound a risk, the agent is only liable to the insurer if the insurer would not have accepted the risk . . . had the insurer known the true state of facts surrounding the risk." Couch on Ins. 2d (Rev. ed.), § 26A:173, p. 329. Furthermore, "[a]n agent who negligently induces the insurer to issue a policy in consequence of which the insurer sustains a loss himself is liable to the insurer for such wrongful conduct." Couch on Ins. 2d, supra, § 26A:175, p. 331. See *Glassman v. Phoenix Ins. Co.*, 117 Ga. App. 171 (160 SE2d 264) (1968).

BSF maintains that American National was negligent in failing to discover the actual owner of the insured property during its investigation of the value of property lost in an earlier fire suffered by Cason while under the homeowner's policy, and contends that the alleged negligence could have been the proximate cause of American National's present injury. BSF reasons that a non-negligent investigation by American National would have resulted in the cancellation of Cason's policy at that time, well before the house fire that is the subject of the present claim. Assuming arguendo that American National owed a duty to its agent to conduct a non-negligent property valuation investigation, the failure to discover the actual owner of the property did not constitute negligence. BSF, American National's agent, had informed American National that Cason owned the property involved, and Cason, as well as his landlord, said that he was involved in a lease-purchase of the property. The direction of a verdict on the cross-claim in favor of American National having been proper, there was no error in refusing to allow BSF to make arguments to the jury on the cross-claim and in refusing to give requests to charge concerning the standard of care to be exercised by an insurance company investigating a loss.

2. At the close of Cason's evidence, BSF moved for a directed verdict on Cason's allegation of negligence on the part of the BSF agent who filled out Cason's insurance application. BSF cites the denial of its motion as error, arguing that no expert evidence was introduced establishing the standard of care generally followed in the insurance industry and the agent's deviation therefrom.

Even if we were to assume that expert testimony is necessary to establish the standard of care required of an insurance agent, such testimony is not necessary where the questions presented "concern matters which a jury can be credited with knowing by reason of common knowledge or the possibility of actionable . . . negligence ap-

pears so clearly from the record that [Cason] need not produce expert . . . testimony concerning the applicable standard of care . . ." *Killingsworth v. Poon*, 167 Ga. App. 653, 656 (307 SE2d 123) (1983). From the jury's verdict it is apparent that the negligence attributed to the insurance agent was her failure to accurately record Cason's answers to the insurance application questions she propounded to him. Inasmuch as the factual contention is not one capable of proof *only* by expert testimony, it was not necessary for plaintiff/appellee Cason to produce expert testimony at trial. See *Savannah Valley &c. Assn. v. Cheek*, 248 Ga. 745 (285 SE2d 689) (1982). See also *Morton v. Allstate Ins. Co.*, 169 Ga. App. 742 (315 SE2d 261) (1984).

3. At trial, appellant sought to introduce testimony of the former supervisor of the insurance agent involved herein, to the effect that the supervisor had never known the insurance agent to have violated any of the rules and regulations under which the insurance agency operated. The trial court's refusal to allow the testimony was not error. "The reputation of a defendant or his employee for exercising care in his actions is not admissible to show that due care was exercised on the occasion in question. [Cits.]" *Ga. Ports Auth. v. Mitsubishi &c. Corp.*, 156 Ga. App. 304 (4) (274 SE2d 699) (1980).

4. Appellant BSF's final enumeration of error and Cason's cross-appeal both focus on the trial court's interpretation of the personal property cost replacement rider to the insurance policy. According to the judgment order entered by the trial court, Cason's policy contained an option allowing him to recover the full cost of repair or replacement of personalty without deduction for depreciation. The insurance company's liability was the smallest of the following: "1. replacement cost of the damaged personal property at the time of the loss. 2. the full cost of repair to personal property. 3. any special limits of liability in this policy. When the cost to repair or replace is more than $1,000 we will pay no more than actual cash value of the damage until actual repair or replacement is completed."

The trial court, sitting as the finder of fact, found that Cason had submitted a proof of loss seeking replacement cost of the items damaged or destroyed by the fire; the replacement cost of items destroyed and the repair cost of items damaged totaled $35,522.08; and the actual cash value of items lost plus the repair cost for personalty damaged and the replacement cost of items replaced prior to trial was $24,489.35.

The trial court awarded Cason the $24,489.35 amount, gave him 180 days from the date of the remittitur signaling the exhaustion of appellate remedies to replace those items listed as totally destroyed, and ordered BSF to pay such replacement costs, with total liability not to exceed $35,522.08. BSF complains that the trial court should not have given Cason such an extended period of time to replace per-

sonalty, and Cason insists that he is entitled to a judgment of $35,522.08 without having to replace the destroyed items. We disagree with both parties and affirm the trial court's judgment.

BSF's complaint concerning the amount of time given Cason to replace his destroyed personalty is without merit. Under the portions of the replacement cost rider quoted in the trial court's order (the only place in the record where language from the rider appears), there is *no* time limit in which an insured seeking replacement cost must replace the personalty. Thus, the trial court's order was more than fair to the insurer.

Cason bases his entitlement to an immediate judgment for the full replacement and repair cost on his interpretation of the language of the rider concerning the insurer's action should the cost to repair or replace personalty exceed $1,000. According to the portion of the rider quoted in the trial court's order, "[w]hen the cost to repair or replace is more than $1,000, [the insurer] will pay no more than actual cash value of the damage until actual repair or replacement is completed." In the aggregate, Cason's demand for replacement exceeds $1,000; however, no single item exceeds that amount. Cason wishes to insert the phrase "per item" into the rider after "$1,000," effectively removing his claim from the proviso that calls for actual replacement of personalty before reimbursement therefor. Under that construction of the contract, Cason would be entitled to $35,522.08; however, we refuse to condone a construction of the contract which, in actuality, amounts to a rewriting of the rider.

Cason also argues that the insurer waived the requirement of actual replacement when the insurer denied coverage. However, the cases cited in support of his proposition (*First of Ga. Underwriters v. Beck*, 170 Ga. App. 68 (316 SE2d 519) (1984); *Whitmire v. Canal Ins. Co.*, 102 Ga. App. 611 (117 SE2d 349) (1960)), state that a denial of coverage constitutes a waiver of policy requirements that require an insured to submit a proof of loss before receiving proceeds. The cases do not call for the complete abrogation of every policy requirement when an insurer denies coverage. The jury verdict entitled Cason to a judgment, but he still had to prove his damages. There was no waiver of the requirement that Cason actually replace the personalty damaged or destroyed before he received complete replacement costs.

*Judgment affirmed. Banke, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 28, 1985.

*J. Ronald Mullins, Jr.*, for appellant (case no. 69757).
*Samuel W. Oates, Jr., William B. Hardegree*, for appellees.
*Samuel W. Oates, Jr.*, for appellant (case no. 69758).

*William B. Hardegree, J. Ronald Mullins, Jr.*, for appellee.