**VALIANT INSURANCE COMPANY, Plaintiff,**

v.

**Charles A. BIRDSONG, et al., Defendants.**

**Civ. A. No. 84–80–2–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

July 16, 1987.

Steve J. Davis, Atlanta, Ga., for plaintiff.

Bruce Benton, Hendley V. Napier, Macon, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

In this diversity action, Valiant Insurance Company (Valiant) and First of Georgia Insurance Company (First) seek to recover from the Birdsong-McKenney Insurance Agency and Charles A. Birdsong (hereinafter collectively referred to as Birdsong) the expenses they incurred as a result of Birdsong's alleged improper binding of a risk not within the guidelines laid down by Valiant and First. By agreement of the parties, this case has been submitted to the court for a decision on the merits based upon the evidence in the record. The parties, therefore, have waived any right to a trial by jury that they might otherwise have been entitled to in this case. The relevant facts in this case are as follows.

### Background

Valiant initiated the present action against Birdsong alleging that its agent's conduct was negligent and/or constituted a breach of the agency agreement between Valiant and Birdsong. As to these allegations, Birdsong denied that it had breached any requirements of its agency relationship, and, further, denied that it was in any way negligent. Birdsong then went on to claim, by way of a third-party impleader action, that if, in fact, it was liable to Valiant for any sums paid under the policy of insurance bound by Birdsong, Birdsong would be entitled to indemnity from First due to its failure to pay fully under its existing insurance contract. First subsequently denied Birdsong's allegations, and filed its own claim against Birdsong alleging claims similar to that of Valiant. As to all of these allegations, the court makes the following findings of fact:

(1) On March 26, 1983, Gary Thomas approached Birdsong about securing insurance for his home.

(2) Mr. Thomas' home was located on parcel 29–3F in Pike County, Georgia. This particular piece of property is located in one of the most unpopulated areas of Pike County. *See* Affidavit of Margie Anne Paris. The rural nature of the area in question is reflected upon the aerial photographs of Pike County that were submitted by the parties. *See* Exhibits C, D, and E attached to affidavit of Margie Anne Paris.

(3) The only neighboring home visible from the Thomas residence was the one residence across the road from the house. *See* Deposition of Gary Thomas, p. 9.

(4) Mr. Thomas' home was a double-wide mobile home that had been set on a brick

foundation. It had a porch on the front of it, and across the back it had another porch and two extra bedrooms added on to the mobile home. On the end of the trailer, a deck with an above-ground swimming pool had been built. The trailer also had a roof built over it. *See* Deposition of Gary Thomas, p. 7.

(5) It was readily apparent to an observer of the home that the Thomas dwelling was a mobile home that had been modified. *See* Affidavit of Kermit Quinton Ward.

(6) Mr. Birdsong personally viewed Mr. Thomas' home prior to procuring insurance for it. *See* Deposition of Mr. Birdsong, p. 21. Furthermore, Mr. Thomas described his home in detail to Mr. Birdsong, when he applied for insurance with the Birdsong-McKenney Agency. Mr. Thomas also stated to Mr. Birdsong at that time that his home was a mobile home that had been modified with certain improvements. *See* Deposition of Gary Thomas, pp. 11, 26.

(7) The parties agree that the Thomas residence had an ISO rating of 9.

(8) The Thomas residence was not in a named subdivision at the time of the loss. *See* Affidavit of Margie Anne Paris.

(9) After taking Mr. Thomas' application for insurance, Birdsong, as agent for First, bound coverage for the property beginning on March 26, 1983. This policy was to run from March 26, 1983, to March 26, 1984.

(10) Subsequent to Birdsong's mailing the information to First, First notified Birdsong that it was declining to cover the property because it was too far from a protected town.

(11) On May 1, 1983, Birdsong thereafter initiated another policy of insurance with Valiant, retroactively binding Valiant from March 26, 1983. In the application for insurance with Valiant, the numeral 7 was placed in the Protection Class block instead of a 9.

(12) The Thomas residence was destroyed by fire on April 17, 1983. At the time of the fire, both policies of insurance were still in effect. First's policy had not been cancelled because the policy could not be cancelled for at least thirty (30) days after coverage had been accepted.

(13) Because both Valiant and First were liable to Mr. Thomas for the loss sustained, Valiant paid $35,034.50 of the loss and First paid $35,159.50 of the loss.

*Applicable Law*

Under Georgia law, it appears that where an insurer is held liable as a result of its agent acting outside of the scope of his agency, that agent can be required to indemnify the insured for the amount it was required to pay under its policy of insurance. *See BSF, Inc. v. Cason*, 175 Ga.App. 271, 272, 333 S.E.2d 154, 156 (1985). In the event that the agent improperly bound a risk, the agent is only liable to the insurer, however, if the insurer would not have accepted the risk had it known the true state of facts surrounding the risk. *Id.* (citing *Couch on Ins. 2d* (Rev.Ed.) § 26A: 173, p. 329). Furthermore, "[a]n agent who negligently induces the insurer to issue a policy in consequence of which the insurer sustains a loss himself is liable to the insurer for such wrongful conduct." *BSF, Inc.*, 175 Ga.App. at 272, 333 S.E.2d at 156. Georgia law, therefore, recognizes both negligence and breach of agency causes of action with respect to an agent's liability to its principal. *See also Chicago Insurance Company v. Camors*, 296 F.Supp. 1335 (N.D.Ga.1969). Based upon this law the court must now decide the merits of the claims made by the respective parties.

*Valiant v. Birdsong*

Valiant claims that Birdsong exceeded its authority to bind the risk in question, and that as a result of this conduct, bound Valiant to cover a risk that it would not otherwise have insured. Valiant claims that Birdsong exceeded its authority in the following ways:

(1) Mr. Thomas' residence was a mobile home;

(2) Coverage on Mr. Thomas' home had been previously "cancelled, declined, or refused" by another insurance carrier;

(3) The mobile home had a swimming pool which was not fully fenced;

(4) The mobile home had an ISO rating of 9, as opposed to the 7 as reflected on the application; and,

(5) The home was not situated in either a named subdivision or a built-up locality. Since Birdsong disputes that it was not properly made aware of the 1982 binding guidelines, the 1979 guidelines that were available will be used.[1] Pursuant to these guidelines it is clear that Birdsong did not have authority to bind a mobile home without first clearing it with Valiant. *See* Plaintiff's Exhibit 8. This court has already found that Birdsong knew of the mobile home nature of the risk in question, and it is clear that it both exceeded its authority by binding that risk prior to seeking approval from Valiant and was negligent in not disclosing these facts to Valiant.

It is also clear that coverage on Mr. Thomas' residence had been "cancelled, declined, or refused by another company" prior to Birdsong placing coverage with Valiant. *See* Plaintiff's Exhibit 8. Birdsong attempts to discount this binding guideline by saying that the coverage with First of Georgia had never been effectively cancelled. While this is true, it is also equally true that there had been a declination or refusal. It is clear that First of Georgia had declined to continue coverage on Mr. Thomas' residence, and this declination should have been discussed with Valiant prior to binding the risk.

Finally, Birdsong's representation that the Thomas residence maintained an ISO rating of 7, as opposed to 9, is material if the binding guidelines prohibited him from insuring that type of risk. The binding guidelines provide in this regard that,

protection class 9 risks may be written when—the dwelling is situated in a built up locality and is not over 20 years

old—a responding Fire Department is within 5 miles—a water supply is available from fire hydrants or a fire department tanker truck of at least 1000 gallon capacity—a recent photograph of the dwelling is furnished.

The court has found, however, that the Thomas residence was located in an extremely rural area, and that for that reason, it is impossible for this court to find that the home was in a built up locality. Binding Valiant to this risk was, therefore, again both negligent and outside the scope of Birdsong's agency agreement.[2]

■ The court further finds that had Valiant been made aware of these facts, and had it acted reasonably and in good faith, it would have declined to insure the Thomas residence. Accordingly, the court concludes that Charles A. Birdsong and the Birdsong-McKenney Insurance Agency is liable to Valiant in the amount of $35,034.50, which is the sum it was required to pay as a result of the loss sustained by Mr. Thomas, costs, plus prejudgment interest of 7% from June 3, 1983. Prejudgment interest is appropriate given the fact that the amount in dispute in this case has been at all times certain and fixed. There has been no dispute over whether the sums paid to Mr. Thomas were excessive or in any other way inappropriate. *See generally, Walton Motor Sales, Inc. v. Ross*, 736 F.2d 1449, 1458 (11th Cir.1984); O.C.G.A. § 7–4–15 (1982); and O.C.G.A. § 7–4–2(a)(1) (1982).

### *First of Georgia v. Birdsong*

First also claims that Birdsong exceeded its authority to bind the risk in question, and that due to this conduct, it too was bound on a risk that it would not otherwise have insured. Specifically, First contends that Birdsong violated the binding guidelines in the following manner:

---

**1.** The only material difference between the 1979 and 1982 guidelines is that under the 1979 guidelines, for the agent to have binding authority on a risk with an ISO rating of 9, the risk must be "situated in a named subdivision" requirement contained in the 1982 guidelines. *See* Plaintiff's Exhibits 6 and 7.

**2.** The court notes, however, that the pool at the Thomas residence was not an "in ground" pool, and, therefore, the binding agreement did not bar Birdsong from insuring the risk in question for that reason. *See* Plaintiff's Exhibit 7.

(1) The Thomas residence was not located adjacent to a protected town;

(2) The Thomas residence was not located in an established subdivision with a named street and house number;

(3) The Thomas residence was a mobile home.

The court has already found that Birdsong was aware that the Thomas residence was a mobile home, and, that since First also does not consider such a risk acceptable, Birdsong exceeded its binding authority when it initiated coverage on the Thomas residence. *See* Plaintiff's Exhibit 22. Furthermore, a class 9 risk is considered unacceptable by First unless it is located adjacent to a protected town and is in an established subdivision with street and number. *See* Plaintiff's Exhibit 22. The court has found that the Thomas residence was not in a named subdivision, nor did it have a street and number address. Accordingly, the court must conclude that Birdsong's failure to get approval for the coverage from First prior to binding it was negligent and exceeded the authority given it by First. The court, therefore, finds that Charles A. Birdsong and the Birdsong-McKenney Insurance Agency is liable to First of Georgia in the amount of $35,159.50, which is the sum it was required to pay as a result of the loss sustained by Mr. Thomas, costs, plus prejudgment interest of 7% from June 9, 1983.

### *Birdsong v. First of Georgia*

■ Finally, Birdsong contends that assuming it is held liable to Valiant for improperly binding the property in question, it is entitled to indemnity from First of Georgia since First of Georgia was fully liable for the entire loss under its policy of insurance. This argument overlooks the fact, however, that the reason why both insurance companies were legally obligated to pay Mr. Thomas for the loss he suffered was Birdsong's breach of its agency agreements and its negligence. Under these facts First of Georgia is not required to indemnify Birdsong for any amounts it is required to pay Valiant, even though First of Georgia was legally obligated to Mr. Thomas for the full amount of the loss. Birdsong's conduct is what caused Valiant and First to be liable to Mr. Thomas in the first instance, and he, therefore, cannot be heard to complain about any liability arising therefrom. Accordingly, Charles A. Birdsong and Birdsong-McKenney Insurance Agency are to take nothing on their third-party complaint against First of Georgia Insurance Company.

In conclusion, the court holds that Valiant Insurance Company is entitled to recover from Charles A. Birdsong and the Birdsong-McKenney Insurance Agency the sum of $35,034.50, plus prejudgment interest of 7% from June 3, 1983, and court costs. In addition, First of Georgia Insurance Agency is entitled to recover from Charles A. Birdsong and the Birdsong-McKenney Insurance Agency the sum of $35,159.50, plus prejudgment interest of 7% from June 9, 1983, and court costs. Finally, Charles A. Birdsong and the Birdsong-McKenney Insurance Agency are to take nothing on their third-party complaint against First of Georgia Insurance Agency.

SO ORDERED.