**SALT LAKE CITY SCHOOL DISTRICT, Plaintiff and Respondent,**

v.

**GALBRAITH & GREEN, INC., Defendant and Appellant.**

No. 860090–CA.

Court of Appeals of Utah.

July 30, 1987.

James R. Brown, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, for defendant and appellant.

John M. Chipman, Andrea C. Alcabes, Bayle, Hanson, Nelson & Chipman, Salt Lake City, for plaintiff and respondent.

Before BILLINGS, JACKSON and GARFF, JJ.

## OPINION

BILLINGS, Judge:

Galbraith and Green, Inc. ("Galbraith & Green") appeals from the trial court's judgment requiring Galbraith & Green to indemnify the Salt Lake City School District ("District") for the amount it paid in settlement of an insurance claim and the expenses it incurred in defending the suit. We affirm.

## FACTUAL BACKGROUND

In the early 1970's the District hired Galbraith & Green as an insurance consultant to assist the District with its self-funded employee insurance program. In July 1973, Galbraith & Green and the District entered into a contract for administrative services at 2.27% of the monthly computed premium. A letter accompanying the proposed contract explained that the contract did not include the consulting services already being provided to the District by Galbraith & Green and the District would be charged 1.49% of the monthly computed premium for consulting services. The District's purchase requisition and subsequent billing statements from Galbraith & Green combined both fees under the heading of "consulting and administration services" payable in the amount of 3.76% of the computed monthly premium.

Galbraith & Green prepared employee booklets for the District to explain the benefits of the insurance program and periodically revised the booklets to reflect changes in the plan adopted by the District. The District approved all booklets prepared by Galbraith & Green before distributing them to its employees.

Galbraith & Green also periodically advised the District as to changes in the law which affected the insurance coverage offered by the District. In 1979, for example, Galbraith & Green advised the District of changes required in maternity coverage as a result of a Federal Civil Rights Amendment. The District adopted the changes recommended by Galbraith & Green.

The District has two types of employees—contract employees and hourly employees. Hourly employees' insurance benefits cease at the end of the month in which their employment with the District terminates. Contract employees, however, retain their insurance benefits until the end of their contract period.

In October 1974, Wade Welch was hired by the District as a Trades Helper. Although he signed a contract of employment, he was considered an hourly employee by the District for purposes of the Dis-

trict's insurance program. In November 1979, Welch voluntarily terminated his employment with the District. Following Welch's termination, his wife incurred medical expenses in the amount of $6,128.62. Because Welch was an hourly employee, the District considered his insurance coverage under the program to have ceased upon the termination of his employment. The District, therefore, refused to provide coverage for Mrs. Welch's medical expenses.

Welch brought suit against the District on two alternative theories. First, Welch claimed that he was a contract employee since he had been hired under a contract with the District. He claimed that under the terms of his employee insurance booklet his insurance coverage did not cease upon his termination, but rather, continued on through the expiration of his contract on June 30, 1980. His claim was based on a provision in the booklet prepared by Galbraith & Green under the heading of "Termination of Coverage":

### TERMINATION OF COVERAGE

The coverage under this plan shall terminate on the earliest of the following dates:

\* \* \* \* \* \*

e) The end of the month in which employment terminates or the end of your contract agreement, whichever is later.

Welch's second theory was that Utah Code Ann. § 31–20–11 (1979), which had become effective shortly before his termination, required the District to provide him with a conversion program upon the termination of his coverage under the District's insurance plan. Welch claimed that the District's failure to do so resulted in its liability for his claim.

The District settled with Welch for $5,000 and then filed the present action against Galbraith & Green seeking indemnification. First, the District claimed that Galbraith & Green drafted the termination portion of its booklet ambiguously by failing to clarify who was a contract employee entitled to extended benefits. This allowed Welch to assert that he was a contract

employee when, in fact, the District had never intended him as such. Second, the District claimed that Galbraith & Green had negligently failed to inform it that Utah Code Ann. § 31–20–11 (1979) required the District to provide a conversion program for its employees upon the termination of their coverage under the District's insurance program.

## I.

■ The issue before this court is whether the trial court was correct in finding Galbraith & Green liable to the District under the theory of equitable indemnity. There are three elements of equitable indemnity. First, the prospective indemnitee (the District) must discharge a legal obligation owed to a third party (Welch). Second, the prospective indemnitor (Galbraith & Green) must also be liable to the third party (Welch). Third, as between the prospective indemnitor (Galbraith & Green) and the prospective indemnitee (the District), the obligation should be paid by the indemnitor (Galbraith & Green). *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984) (citing *Ore-Ida Foods, Inc. v. Indian Head Cattle Co.*, 290 Or. 909, 919–20, 627 P.2d 469, 475 (1981)).

## II.

■ In deciding whether the trial court correctly found that the District discharged a legal obligation to Welch, we must determine the effect of the District's unilateral settlement with Welch. The general rule of law regarding indemnitees who make unilateral settlements without first giving notice to the indemnitor is that the indemnitee is required to prove by a preponderance of the evidence that he was actually liable to the third party. *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 304–05 (5th Cir.1973), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974); *Pan American Petroleum v. Maddux Well Serv.*, 586 P.2d 1220, 1225 (Wyo.1978).

■ The District settled its lawsuit with Welch without notifying Galbraith & Green of the claim. Galbraith & Green, therefore, was denied the opportunity to either approve the settlement or to assume the defense of the case. Thus, the District was required to establish below, by a preponderance of the evidence, that it was actually liable to Welch. The District must in addition have shown that the amount it paid in settlement was reasonable. *Feuer v. Menkes Feuer, Inc.*, 8 A.D.2d 294, 187 N.Y.S.2d 116, 122 (N.Y.App.Div.1959).

■ The District offers two theories under which it claims to have proven its liability to Welch at trial. First, the termination portion of the booklet was ambiguous and caused Welch to believe he would continue to receive insurance benefits after the termination of his employment. Second, Utah Code Ann. § 31–20–11 (1979) required the District to provide a conversion policy for its employees upon the termination of their coverage under the District's insurance program. We find that the trial judge could have properly found that the District was liable to Welch under either of these theories.

The ambiguity of the termination portion of the benefit booklet is obvious on its face and establishes the liability of the District to Welch. The booklet was designed to inform the District's employees about their rights under the program, and the employees were intended to rely on the booklet. The District was, therefore, legally bound to honor the terms of the booklet.

There is also sufficient evidence in the record to support the finding of the trial court that the District was liable to Welch under Utah Code Ann. § 31–20–11 (1979). Although there was conflicting evidence offered on this point at trial, it is not for us to substitute our judgment for that of the trial court. Our duty is merely to determine whether the lower court's findings are clearly erroneous. Utah R.Civ.P. 52(a); *Ashton v. Ashton*, 733 P.2d 147, 149–50 (Utah 1987). We hold that they are not.

■ There was also evidence submitted during the trial that the settlement of $5000 in lieu of a claim of $6200 was reasonable. Thus, under either theory, the District carried its burden of proof. We find, therefore, that the evidence in the

record supports the finding of the trial court that the District was actually liable to Welch.

### III.

Under the second element of equitable indemnity, there must be sufficient facts in the record to support the finding that Galbraith & Green owed a duty to Welch. In Utah a person is liable to third parties if that person knew that those third parties would rely on his work. In *Milliner v. Elmer Fox & Co.*, 529 P.2d 806 (Utah 1974), the Utah Supreme Court determined that an accountant was liable to third parties whom he knew would rely on his report to extend credit to his client. *Id.* at 808. The court determined, however, that a future purchaser of stock of a corporation "belongs to an unlimited class of equity holders who could not be reasonably foreseen as a third party who would be expected to rely on a financial statement prepared by an accountant for the corporation." *Id.*

■ Under this analysis, Galbraith & Green owed a duty to Welch. First, Galbraith & Green agreed to draft the booklet explaining the insurance benefits provided by the District to its employees. It is reasonably foreseeable that the employees of the District would rely on the booklet to determine their rights and obligations under the insurance program. If the booklet were drafted ambiguously, the employees would be misled as to what they must do to qualify for insurance benefits and what benefits were actually available to them.

■ Second, Galbraith & Green owed the District's employees a duty to keep the District abreast of legal changes which affected their insurance with the District. Welch needed to know that he had a right to a conversion policy so he could take the opportunity to protect himself upon the termination of his coverage under the District's insurance program. Based on these facts, the trial court could have reasonably concluded that Galbraith & Green owed a duty to Welch.

### IV.

The third element of equitable indemnity requires that as between Galbraith & Green and the District, the obligation should be discharged by Galbraith & Green. In deciding whether this element of equitable indemnity is present, we must determine whether the trial court's finding that Galbraith & Green's negligence resulted in the District's liability to Welch is supported by the evidence.

### A.

■ Galbraith & Green had a duty to provide consulting services to the District. Although the contract entered into by the parties in July 1973 was for administrative services and specifically excluded consulting services, it is clear that this contract was not intended to be the entire agreement between the parties. The cover letter accompanying the administrative contract explained that the contract did not include the consulting services already being provided to the District by Galbraith & Green. The letter also explained that the 2.27% fee in the contract was only for administrative services and that a consulting fee of 1.49% would be added to it for a total fee of 3.76%. This 3.76% total fee was designated in a subsequent purchase order by the District and subsequent monthly billing statements by Galbraith & Green as "consulting and administration services" and was consistently paid by the District. Galbraith & Green also sent the District a list of consulting services which it had provided and would continue to provide along with a list of new consulting services which would be provided in the future. These facts clearly support the trial court's finding that the parties' agreement included consulting as well as administrative services.

■ The evidence also supports the finding by the lower court that the agreement between the District and Galbraith & Green included a duty on the part of Galbraith & Green to provide legal advice to the District. At trial, Gary Harmer of the District testified that Galbraith & Green had agreed to advise the District of changes in the law regarding insurance

coverage. This testimony was supported by similar testimony given by Don Merrill, a former assistant Vice President at Galbraith & Green who testified that Galbraith & Green periodically advised the District of changes in the law which it felt necessitated changes in the District's self-funded insurance plan. On May 7, 1979, for example, the District received a letter from Galbraith & Green advising them of a Federal Civil Rights Amendment which required changes in the maternity benefits offered under its insurance program. Based on the above, there was sufficient evidence for the trial court to find that Galbraith & Green had a duty to keep the District abreast of changes in the law which would affect its insurance program.

In conclusion, we find that the evidence supports the findings of the trial court that Galbraith & Green owed a duty to provide consulting and administrative services for the District regarding its self-funded insurance program. This duty included the two-fold responsibility of Galbraith & Green to draft the employee insurance benefit booklet in a clear and unambiguous manner and also to provide the District with legal advice regarding its insurance program.

### B.

■ Galbraith & Green claims that since the District offered no expert testimony that Galbraith & Green breached its duty as an insurance consultant, the trial court must be reversed. We hold that expert testimony was not required to show the standard of care required by Galbraith & Green under the facts of this case.

■ If the matter at issue in the case is one which requires special knowledge not held by the trier of fact, expert evidence must be presented. If, however, the matter is one which is within the knowledge of the average trier of fact, no expert testimony is required. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Rosenberg by Rosenberg v. Cahill*, 99 N.J. 318, 492 A.2d 371, 374–75 (1985); *Netzel v. State Sand & Gravel Co.*, 51 Wis.2d 1, 186 N.W.2d 258,

261–62 (1971); *see also Dixon v. Stewart*, 658 P.2d 591, 597 (Utah 1982).

■ Expert testimony is not required "simply because the circumstances are outside the average juror's experience if the other evidence is such as to present the issues in terms which the jury can be expected to understand." *Hall v. State*, 290 Or. 19, 619 P.2d 256, 261 (1980) (citations omitted). If the jury is capable of understanding the primary facts of the case and drawing correct conclusions from them, no expert testimony is required.

The majority rule is that expert testimony is not required in matters involving insurance agents and brokers unless technical insurance issues beyond the understanding of the average trier of fact are involved. In *Monsantofils v. Gacek Ins. Agency, Inc.*, 282 Or. 3, 576 P.2d 789, 790 (1978), a case involving the failure of an insurance agent to procure insurance for plaintiff as promised, the court held that no expert testimony was required to establish the standard of care. *See also BSF, Inc. v. Cason*, 175 Ga.App. 271, 333 S.E.2d 154, 156–57 (1985) (expert testimony was not necessary to establish the standard of care followed in the insurance industry, and an insurance agent's deviation from it, in a case where the agent failed to accurately record answers to questions on an insurance application); *Shahrokhfar v. State Farm Mut. Auto. Ins.*, 634 P.2d 653, 656 (Mont.1981) (expert testimony was not required to evaluate the conduct of an insurance agent who had brought suit against the wrong party since there were no technical issues involved).

The insurance cases which have required expert testimony involve technical insurance issues. In *Doble v. Lincoln County Title Co.*, 692 P.2d 1267, 1270 (Mont.1985), for example, the court found that "[t]itle examination is complex and intricate and beyond the common understanding of lay persons."

There are no technical insurance issues in this case which require expert testimony. The knowledge needed to determine whether the termination portion of the insurance booklet was drafted ambiguously is within

the experience of the average trier of fact. This booklet was designed to be read and understood by laymen. The average trier of fact could also determine whether Galbraith & Green was required to inform the District of changes in the law which affected the District's insurance program, and whether Galbraith & Green did so. We therefore find that the trial court correctly held that the District was not required to produce expert testimony to establish the standard of care required of Galbraith & Green.

■ The record supports the finding of the trial court that Galbraith & Green breached the duty it owed to the District. First, the court could have properly found that the termination provision in the booklet drafted by Galbraith & Green was ambiguous in that it failed to distinguish a contract employee, entitled to extended benefits, from an hourly employee. Second, the District called an insurance lawyer as an expert witness who testifed that Utah Code Ann. § 31–20–11 (1979) applied to the District's insurance program. Based upon the facts, the trial court could reasonably infer that Galbraith & Green's contractual duty to the District included the duty to inform the District of this change in the law and that Galbraith & Green breached this duty. Because the District's obligation to Welch arose due to Galbraith & Green's negligence, it is only fair that it should be required to shoulder the burden.

Judgment affirmed. Costs to respondents.

JACKSON and GARFF, JJ., concur.