STILLSON *v.* PRUDENTIAL INSURANCE COMPANY. OF AMERICA.

No. 15723.  FEBRUARY 6, 1947. REHEARING DENIED MARCH 20, 1947.

*Houston White* and *Sam F. Lowe,* for plaintiff.

*W. K. Meadow* and *Spalding, Sibley, Troutman & Kelley,* for defendant.

WYATT, Justice.  The application for insurance in this case was attached to and made a part of the policy of insurance, and contained the following language: "I agree that no agent has the authority to waive the answer to any question herein, to modify this application, or to bind the company by making any promise or representation or by giving or receiving any information."

Answers to questions contained in the application did not reveal that the applicant had ever suffered from abnormal blood pressure. The application was signed by the insured.

The evidence disclosed that in the fall of 1943 the insured was informed, when he went to the Red Cross blood bank to make a donation, that he had high blood pressure, and that he should consult a physician; that he did consult Dr. Mims, Dr. Cliff Sauls, and Dr. F. L. Neely, and was advised that he had high blood pressure and an enlarged heart; that he was continuously treated by the doctors for this condition until he was admitted to Piedmont Hospital, where he died on February 20, 1946. The medical testimony was to the effect that during all of this time the condition of the insured was material to a life-insurance risk. The conflict in the testimony relates only to the circumstances surrounding the taking of the application for insurance. Mr. Blair, the agent who secured the application, testified that he was authorized to solicit business, collect premiums, deliver policies, and to get information and report it to the company. He testified that, as the questions set out in the application for insurance were propounded to the insured, he, the agent, wrote the answers exactly as given by the insured, and then handed the application to the insured for his signature, and the insured signed the application. The beneficiary named in the policy and another person called as a witness testified that they were present when the application was written; that, as the questions were propounded to the insured by the agent, the insured gave to the agent complete information about his high blood pressure and enlarged heart, and gave him the names of the doctors who had been, and were then, treating him; that the agent then read back to the insured the answers as he pretended they were answered in the application; that the answers to the questions as read by the agent contained complete information about the physical condition of the insured and the doctors who had been, and were then, treating him; that after thus reading the answers the agent presented the application to the insured with all portions of the application covered with his hands, except the place for the signature, and the insured signed the application. It was further shown that the policy was delivered by the agent to the wife of the insured; that she put the policy away with other policies of the family, and that the insured never saw the policy.

A verdict having been directed for the insurance company on the conflicting evidence, the legal question here presented is: Where a soliciting agent of an insurance company undertook to prepare for another an application for insurance and wilfully and fraudulently, without the knowledge of the applicant, inserted in the application false answers to material questions, which were contrary to truthful answers given by the applicant, and the agent, after inserting such false answers, wilfully read the application to the applicant in such a manner as to indicate that the answers were written as given by the applicant, and the applicant then signed the application, will the insurance company be permitted to avoid the policy on the ground that the application, which was attached to the policy, contained a clause limiting the agent's authority?

There appears to be much confusion in the decisions of the courts of this State on the question here presented. We think that this confusion has been caused by an erroneous statement made in *National Accident & Health Ins. Co.* v. *Davis,* 179 *Ga.* 595 (176 S. E. 387).

In *Clubb* v. *American Accident Co.,* 97 *Ga.* 502 (25 S. E. 333), this court said: "Where soliciting and forwarding applications for policies of insurance was within the scope of the duties of an agent of an insurance company, and such agent undertook to prepare for another an application for insurance and wilfully inserted therein a false answer to a material question, he will be regarded in so doing as the agent of the company and not of the applicant, and the agent's knowledge of the falsity of the answer will be imputed to the company. Although, in such case, the application was, by its terms, a part of the contract of insurance, and was signed by the person to whom the policy was subsequently issued, if the latter was fraudulently misled and deceived by the agent as to the contents of the application in the respects indicated, and was in fact ignorant that it contained the false answer in question, the company will not be allowed to avoid the policy on the ground of a false warranty in relation to that answer."

In the *Davis* case, supra, the court stated that case was distinguishable from the *Clubb* case, supra (and other cases), "where there was no limitation upon the agent's authority in an antecedent application, and where the agent was thus acting within the ap-

parent scope of his authority. in the preliminary negotiations." This statement is clearly erroneous for the reason that in the statement of facts in the *Clubb* case it appears that the application was made a part of the policy of insurance, and in the statement of facts is quoted the following language from the application: "I understand and agree that the company shall not be bound by any statements made by or to any person, unless written herein." Accordingly, in the *Clubb* case the court was dealing with a case in which the insurance company, in the application, had attempted to limit the authority of the agent. The language in that case, while not the same as the limitation in the instant case, has the same import and meaning.

We find ourselves faced with this question: Shall we follow the rule laid down in the *Clubb* case or the contrary rule laid down in the *Davis* case? The author of this opinion is perfectly satisfied to adopt the holding in the *Clubb* case for the reason that, in his opinion, it is the correct rule of law. We are, however, without any choice in the matter. The *Clubb* case is the oldest case and is a unanimous opinion by a full bench, while the *Davis* case is by a divided court. Therefore, the *Clubb* case is controlling.

We think the rule that should be applied to the facts in the instant case is well stated in 29 Am. Jur. 634, 641, 643, §§ 833, 843, 846:

"In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal. This principle is illustrated by the rule that the insurer is estopped to assert the falsity of answers to questions contained in an application for insurance or the policy itself, where such false answers are inserted by the insurer's agent to whom the applicant for insurance gave correct answers or information." § 833.

"According to the great weight of authority, if an agent of the insurer, after obtaining from an applicant for insurance a correct and truthful answer to interrogatories contained in the application for insurance, without knowledge of the applicant fills in false answers, either fraudulently or otherwise, the insurer cannot assert the falsity of such answers as a defense to liability on the policy,

and this is true generally without regard to the subject-matter of the answers or the nature of the agent's duties or limitations on his authority, at least if not brought to the attention of the applicant." § 843.

"Apart from any question of the effect of an attempt by the insurer to limit the authority of its agent by stipulations inserted in the application or policy, or provisions in its bylaws, or by statute, the rule supported by the great weight of authority is that, if an application for insurance is drawn by an agent of the insurer, who fills in false answers to the interrogations contained therein which are truthfully answered by the insured, without fraud, collusion, or actual knowledge of the insured, or the existence of circumstances from which constructive knowledge of such falsity might be imputed to him, the insurer cannot rely upon the falsity of such answers in seeking to avoid liability under the policy issued upon the application. The view generally taken is that the agent in making out the application acts for the insurer, and that the insurer is therefore estopped to assert the mistake, or, as has been said in some cases, the mistake is deemed to be waived by the insurer. . . The chief reason for the majority rule that an insurer cannot rely upon the falsity of answers inserted in an application for insurance by its own agent in response to questions correctly answered by the insurer is the protection of the insured, who has acted in good faith and answered the inquiries correctly; the insurer, to protect itself, needs only to select competent and trustworthy agents." § 846.

Without citing numerous decisions from other jurisdictions, we think that we are justified in stating that the great weight of authority supports the rule laid down in the *Clubb* case, supra. See 81 A. L. R. 855.

It must be remembered that in the instant case the beneficiary is suing on the policy just as it is written; the defendant company seeks to avoid the contract of insurance, notwithstanding its agent practiced a fraud upon both the insured and the insurance company, if the contentions of the plaintiff are believed by the jury. If the plaintiff's contentions are true, then we think that the company which made it possible in the first instance for the agent to perpetrate the fraud should suffer rather than the other innocent party.

From what has been said above, it follows that the trial court committed error in directing a verdict for the defendant.

*Judgment reversed. All the Justices concur, except Jenkins, C. J., and Bell, J., who dissent.*