A90A1793. JAMES, HEREFORD & McCLELLAND, INC. v. POWELL.
(402 SE2d 348)

BIRDSONG, Presiding Judge.

This appeal follows the second trial of Thomas O. Powell's suit against the defendant insurance agency (James, Hereford & McClelland, Inc.) for fraud in connection with his application for disability insurance. Powell complained that he applied for disability insurance through the insurance agency, and was denied insurance because of material misrepresentations inserted in the application by the defend-

ant's employee to the effect that Powell had not had any previous disability.

The first trial resulted in a verdict for defendant, which we reversed for an erroneous grant of directed verdict on the issue whether a fiduciary relationship existed which would excuse any lack of diligence of Powell. *Powell v. James, Hereford & McClelland*, 189 Ga. App. 747 (377 SE2d 683). The second trial resulted in a verdict for Powell for $96,000 actual damages and $40,000 punitive damages. This appeal follows the denial of judgment n.o.v. to defendant. *Held*:

1. The evidence construed most favorably to the verdict shows that in June 1982, six months before he applied for the disability policy, Powell's orthopedist, Dr. Bickerstaff, executed forms saying he was totally disabled, so as to relieve him of paying premiums on a life insurance policy. Powell had sustained a back injury in 1975 and did not work again until 1980. From 1980 he worked in construction until January 1983, less than a month after he applied for disability insurance, when he fell in a store and injured his back again.

Powell paid a conditional premium when he applied for coverage, but the application provides clearly that coverage was conditional on acceptance by the insurer. The insurer at first approved the policy but then decided not to issue or deliver the policy after it "receiv[ed] information from Dr. Bickerstaff . . . that [Powell] has been permanently disabled due to back . . . and neck injuries since at least 1978. . . . The policy was not issued because [Powell] made material misrepresentations on the disability insurance application concerning his medical history." It is clear from this statement that the insurer declined insurance because it learned Powell was disabled when he applied for disability insurance, and the evidence shows that whether it learned these facts after material misrepresentations had been made or even if the facts had been truthfully represented, coverage would have been denied.

There is no evidence Powell could have obtained disability coverage from any source if his medical history were known.

In cases where the insurance agent made a "material" misrepresentation, the cause of action is generally against the insurer for coverage, where the insurer has accepted the risk and agreed to provide a contract for coverage. The theory is that conditions which enter into the validity of the contract at its inception were waived by the insurer's agent (*Metropolitan Life Ins. Co. v. Hale*, 177 Ga. 632 (170 SE 875); *Mechanics &c. Ins. Co. v. Mutual Real Estate &c.*, 98 Ga. 262 (1) (25 SE 457)); also, the insurer's agent's fraudulent insertion of false answers in an application imputes to the insurer knowledge of the falsity and estops the insurer from denying such notice. *National Accident &c. Co. v. Davis*, 179 Ga. 595 (176 SE 387); reversed on other grounds, *Stillson v. Prudential Ins. Co.*, 202 Ga. 79 (42 SE2d

121); *Clubb v. American Accident Co. &c.*, 97 Ga. 502 (25 SE 333).

While the insured may thus have a cause of action *against the insurer for coverage*, we have found no authority indicating an applicant may recover from the agent for fraud in making material misrepresentations for the purpose of inducing an insurer to provide coverage which the applicant could not otherwise obtain. The one injured in such a case would be an insurer who accepted the risk because it was unaware of certain material facts. Powell was the beneficiary of such alleged fraud; he had no cause to complain when it failed, unless he had shown it prevented him from seeking other coverage which he actually could have obtained. In reality, Powell is complaining only that an alleged false representation which would have benefitted him if it had succeeded somehow "injured" him by having failed. This "injury" is entirely illusory. It is the nature of illusion that it deceives, either by prestidigitation or by crude appearance; by creating the illusion that he had been injured, Powell's case has deceived many. One of the elements that must be present and proven in fraud is damages. Appellee has shown no damages as hereto set forth in this opinion.

Powell was not entitled to rely upon false representations made to the insurer, for that would be to suborn fraud and encourage collusion. See *German American Mut. Life Assn. v. Farley*, 102 Ga. 720, 738 (29 SE 615). This is not a case for even nominal damages to Powell, for the alleged fraud of the agent was against the insurer. Powell cannot recover damages based upon an alleged false statement which was entirely to his benefit and which, when it failed, caused him no harm.

2. Even if Powell could have a cause of action for fraud against the agent, he cannot recover under the evidence in the case.

In the first trial he swore he signed the application in blank. See *Powell*, supra. His testimony in this trial is that the agent asked him some questions about his health history but never asked him the questions about back injury; he signed the document, but he did not know what he signed. There is no evidence of a fiduciary relationship between Powell and the agent. The mere fact that Powell "trusted" the agent does not make the agent his fiduciary. *Thomas v. Eason*, 208 Ga. 822 (69 SE2d 729). " 'The mere fact that one reposes trust and confidence in another does not create a confidential relationship. "In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." *Dover v. Burns*, 186 Ga. 19, 26 (196 SE 785) (1938).' *Lewis v. Alderman*, 117 Ga. App. 855 (1) (162 SE2d 440) (1968)." *Kienel v. Lanier*, 190 Ga. App. 201, 203 (378 SE2d 359). There is no evidence the agent served as a "broker" for Powell so as to make him Powell's agent. *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268, 269 (210 SE2d 801). No fiduciary rela-

tionship existed to excuse Powell from exercising due diligence in signing this statement: "I declare that all of the above statements and answers are complete and true to the best of my knowledge and belief."

3. Moreover, the terms of this statement require *Powell himself* to declare to the best of *his* knowledge and belief. The statement is formulated to prevent an applicant from asserting that he relied upon someone else, and to ensure that the declaration of truth is " '*not the act of one whose insertion of [material misrepresentations] would be binding upon the company. . . .*' " (Emphasis supplied.) *Prudential Ins. Co. v. Perry*, 121 Ga. App. 618, 628 (174 SE2d 570). If Powell signed it in blank as he swore at the first trial, he could not have signed it truthfully, since it provides: "I declare that *all of the above statements and answers are complete and true* to the best of my knowledge and belief." And while maintaining, as he did, that the paper was "folded or rolled" to conceal questions 18-23 and that the agent never asked him those questions, he could not, as he did, suggest that the answers were "changed" after he answered them, because he said he never answered them and never saw them.

Powell gave no excuse as to why he could not have detected that the application had been "folded or rolled" to conceal material questions as he surmised at trial. He did not contend he was prevented from unrolling or unfolding it. He does not suggest he could not have seen by simple observation, as he did at trial, that the paper was folded or rolled. The terms of the statement required him to examine *all* the questions and answers before he signed it, and there is no evidence he made any effort to do so. "Nothing appears as to why he could not have taken all the time he wished to take in reading it, or that he was in any way prevented from doing so." *Prudential Ins. Co. v. Perry*, supra at 623. Recovery on a policy has been allowed where the agent practiced some artifice or device to *prevent the applicant's discovery* of the agent's false answers (*Stillson*, supra; *Tallent v. Safeco Ins. Co. of America*, 99 Ga. App. 11 (107 SE2d 331)), but the evidence here is not that Powell was prevented from discovering the false answers or from discovering a contrivance which he now suggests concealed the answers from his view. In *McCommons v. Greene County*, 53 Ga. App. 171, 173-174 (184 SE 897), we held: "The mere fact that the plaintiff signed the deed in a room where the shades were not up and the blinds were not open, where it does not appear that she could not have raised the shades or opened the blinds and let in sufficient light by which she could read the deed, is insufficient as an excuse for her not reading the deed and becoming acquainted with its contents before she signed it."

"Being able to read and write . . . he could have readily determined, when he signed the application, that it called for [certain] in-

formation. . . . *Its preparation was on his own responsibility, and was not the act of one whose insertion of false and material matter or wilful concealment of material facts would be binding upon the company. . . .*" (Emphasis supplied.) *Prudential Ins. Co. v. Perry*, supra at 628.

4. The trial court committed reversible error in this trial by giving the jury instructions which permitted the jury to infer a fiduciary relationship existed between Powell and the agent. There was no evidence to support such an inference. See Division 2, supra.

Moreover, the charge was error also for the reason that even a fiduciary relationship would not excuse Powell from exercising ordinary diligence in reading and signing this particular statement which by its terms required him to declare personally according to his own knowledge and belief, and there was no evidence he was prevented from doing so or from discovering any alleged contrivance. See Division 3, supra.

We note the trial court also erred in refusing to give the charge on impeachment, since it was authorized by the evidence.

5. There is an independent controlling reason Powell cannot recover for fraud.

Powell's own evidence shows that he misrepresented the material facts to the agent. Question 22 asked the name of Powell's physician; "Dr. Jennins" is written in by hand. When asked at trial how the agent could have gotten this information if he did not ask questions 18-23, Powell said the agent asked "*had I had any previous medical impairment, and I told him Dr. Jennins had operated on me in 1981.*" (Emphasis supplied.)

This is a conscious suppression by Powell from the agent of the material fact that he consulted Dr. Bickerstaff for a disabling medical impairment (back injury) in 1978 and 1980, and in June 1982, when Dr. Bickerstaff certified he was permanently disabled. Even where an insured made false representations *at the suggestion of the agent*, recovery on the policy has been denied on grounds the insured's own act "manifests a conscious suppression of information which was sought by the company, even though he acted on the agent's suggestion, and which concealment . . . must be held as a matter of law material to the risk." *Mutual Benefit Health &c. Assoc. v. Marsh*, 62 Ga. App. 425, 431 (8 SE2d 117); *Prudential Ins. Co. v. Perry*, supra at 628; see esp. *National Life &c. Co. v. Preston*, 68 Ga. App. 614, 615 (23 SE2d 526). Powell's "conscious suppression" of material facts prevents him from claiming that the agent's misrepresentations alone caused the insurer to refuse coverage. And, Powell can hardly accuse the agent of fraud when, for all that appears, *it was Powell who deceived the agent in the first place.*

We have construed all the evidence in favor of the verdict, yet

the evidence clearly demands a verdict for appellant. Accordingly, the trial court erred in failing to grant judgment n.o.v. to appellant. See OCGA § 9-11-50 (b).

*Judgment reversed. Banke, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 18, 1991.

*Dickey, Whelchel, Brown & Readdick, J. Thomas Whelchel,* for appellant.

*Dennis J. Strickland, Sr.,* for appellee.