A93A2245. SOUTHERN GUARANTY INSURANCE COMPANY et al. v. RAGAN INSURANCE AGENCY, INC. et al.
(442 SE2d 871)

ANDREWS, Judge.

Southern Guaranty Insurance Company (Southern) and Charles Shierling Construction Company, Inc. appeal from the granting of summary judgment to Ragan Insurance Agency and State Automobile Mutual Insurance Company and the dismissal from the litigation of Shierling Construction Company.

1. Viewing all the undisputed facts in the light most favorable to Southern and Shierling, *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991), the evidence on summary judgment was as follows.

A wreck occurred on July 9, 1985 involving a 1963 Chevrolet C60 truck driven by Shierling employee Clark and used in the construction business. Mr. Eliasz, who was in the car struck by the Shierling truck, died. On that date, policies issued by Southern with an effective date of June 30, 1985 were in place. These provided general and automobile liability as well as workers' compensation and excess liability coverage.

These policies were obtained by Shierling from Philips of the Graham-Naylor Agency, Inc. The premiums had been paid to Southern as of the accident date. Southern defended the suit and entered a settlement with Mrs. Eliasz for $1,000,000 which has been paid. In return, she signed a full release. Southern seeks contribution from

State Auto as a result of this settlement, contending that State Auto also had coverage in place on the accident date.[1]

The Graham-Naylor Agency had previously provided business insurance for Shierling in 1984. That policy was written by Bituminous and was scheduled to expire on March 19, 1985. At that time, Bituminous' rates went up and Philips obtained a quote from Southern for Shierling. Shierling, however, advised Philips that he was not going to take the coverage, because he had a better rate with another agent. At Shierling's request in June, Philips checked with Southern on June 24, 1985, found the rates quoted in March were still good, and issued the policies under which payment of the Eliasz settlement was made.

On March 15, 1985, Shierling met with Mr. Ragan of Ragan Insurance Agency concerning his business coverage. In January 1985, Ragan had placed personal coverage for Mr. and Mrs. Shierling with Grange Mutual Insurance Company. This coverage, however, had been cancelled by Grange by March 1985 due to inaccuracies in the driving record information provided by the Shierlings. Ragan also obtained personal automobile, major medical and life insurance from Grange and another insurance company for Shierling and members of his family.

Because of the cancellation by Grange, Ragan contacted the underwriter for State Auto before accepting Shierling's application for business coverage on March 14, 1985. Binders were authorized by the underwriter and went into effect on March 19, 1985. Shierling stated that he believed he had acquired the 1963 truck involved in the wreck after March 19, 1985 and that he had not asked Ragan to put that vehicle on the State Auto policy.

A June 24, 1985 listing of vehicles provided to Philips for inclusion in the Southern policy includes the 1963 truck. The Fleet Schedule attached to the State Auto policy does not include this truck. Because, however, Southern contends that the policy issued by State Auto included an after-acquired vehicle provision, we will address the contentions regarding the viability of the State Auto policy.

Shierling completed the State Auto application and gave Ragan a check for $1,500. Shierling said that Ragan "told me to make a $1,500 binder and he [Ragan] would get the company to finance the balance of premiums on monthly payments."

Shierling signed a Premium Finance Agreement which contained blanks where the total premium, down payment, monthly payment amounts, and finance charge should be. This was because, until the

---

[1] The issue of coverage under State Auto's policy and Ragan's role in it, Counts 3 and 4 of Southern's complaint, are the only substantive matters addressed by the summary judgment and enumerated as error. Therefore, these are the only claims addressed. *West v. Nodvin*, 196 Ga. App. 825, 830 (4b) (397 SE2d 567) (1990).

application was processed by State Auto, the amount of the premium was not definitely known.

Shierling was aware that he had 90 days within which to receive the permanent policies and during which the binder would apply. Ragan had requested that Shierling make monthly payments to him which would be escrowed until the policies were received, but Shierling refused. Ragan advised him that, because he refused this arrangement, when the policies came, there was going to be a "large, substantial payment at that time."

Ragan forwarded the signed finance application to Stateco, a wholly owned financing subsidiary of State Auto, when he sent the application for insurance to State Auto. Stateco would pay the full year's premium to State Auto upon receipt of a specified percentage down payment from the insured. The amount over the down payment would then be financed for the insured by Stateco. Because the policies' numbers were not yet available and the required down payment had not been included with the financing application, the finance application was returned to Ragan. He received the permanent policies from State Auto on June 14, 1985 and filled in the policy numbers and other blanks on the financing application. It reflected a "Cash Price Total Premium" of $10,517 and a required down payment of $2,629.95. State Auto did not receive any payment of premium on these policies. That these blanks were not filled in until after Shierling signed the document is of no avail. " 'If a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it. [Cit.]' [Cit.]" *Fore v. Parnell-Martin Cos.*, 192 Ga. App. 851, 853 (2) (386 SE2d 723) (1989); *Hall v. World Omni Leasing*, 209 Ga. App. 115, 117 (2) (433 SE2d 297) (1993).

The application for insurance, which Shierling does not dispute was completed when signed by him, reflects that the application is for a "policy term" of three years and that premium payment will be "annual installments (3 yr. pol. only)" under which is noted "Statco" (sic).

Prior to June, Shierling had called Ragan and asked where the policies were. Although he denied having received any letters from Ragan, Ragan mailed two, one on May 27, 1985 and one on June 14, 1985, requesting that additional payments be made toward the State Auto policy. Also, in April, Ragan made a notation in his business records that, on April 30, 1985, he had sent the invoice to Shierling for the April installment on the down payment. These letters and invoice were sent to the correct mailing address and were not returned to Ragan. Shierling acknowledges that he was told by Ragan that a large payment was due and that the May 27 letter did reflect a conversation which he had with Ragan around that time.

Ragan had gone by Shierlings' residence on at least one occasion,

Friday, June 7, to attempt to collect payment.

Shierling was asked at his deposition in 1988:

"Q. Mr. Shierling, I take it it was not your desire at the point that you went to Graham-Naylor [June 1985] and applied for Southern Guaranty coverage and paid for that coverage, I take it it was not your desire to maintain coverage with, duplicate coverage; that is to have two separate insurance companies insuring the same thing?

"A. That's correct.

"Q. So, at that point, obviously, you were not going to make any more payments to State Auto because you had, . . . if the bill had come in for example, you would not have paid that because you had coverage with . . . Southern Guaranty?

"A. That's correct."

He further testified that "I had felt like that possibly I was paying insurance to an agency that wasn't for State Auto and I wasn't never going to receive any policy. And that if I had an accident, then I might not be covered."

Having been unable to contact Shierling or obtain the payments due, Ragan mailed the policy back to State Auto on June 21, 1985. No notice of the accident was given by Shierling to State Auto, only to Southern.

Shierling acknowledges that, on July 11, 1985, he received an auto policy notice of cancellation from State Auto. This cancellation was issued in response to a request from Ragan in order to clear his and State Auto's financial records of the policy.

2. According to Shierling's own testimony, he never knew the permanent policy had been received by Ragan and, at least after June 30, 1985, he did not intend to pay any more money to Ragan, nor did he believe that he had obtained permanent coverage from State Auto. At most, he had received, in the form of certificates of insurance, proof of the issuance of a "binder" by State Auto, pending issuance of the permanent policy upon payment of the annual premium.

"No binder shall be valid beyond the issuance of the policy with respect to which it was given or beyond 90 days from its effective date, whichever period is the shorter. . . ." OCGA § 33-24-33 (b). Here, Shierling did not intend to have insurance with State Auto after the expiration of the binder coverage and the accident occurred thereafter. Under the circumstances, there is no basis upon which Shierling could reasonably have believed he was insured by State Auto at the time of the accident and, in fact, he disclaims any such belief. *Jourdan v. First Nat. Ins. Co.*, 203 Ga. App. 155, 156 (416 SE2d 162) (1992); *Southern Gen. Ins. Co. v. Snipes*, 196 Ga. App. 727, 728 (396 SE2d 808) (1990). Compare *Progressive &c. Ins. Co. v. Davis*, 199 Ga. App. 598, 599 (405 SE2d 529) (1991).

There was no error in granting summary judgment to State Auto

on the claim by Southern for contribution.

3. As for Ragan, in support of the agency's motion for summary judgment, Ragan came forward with a financial resolution of his dealings with Shierling. Shierling stated his belief that the $1,500 check was to go to the State Auto business policies only, although there was no such notation on the check. Ragan's testimony was uncontradicted that, as of August 20, 1987, Shierling was indebted to Ragan for $7,415.87 for all personal and other policies of insurance obtained by Ragan from Grange, American States, and others.

"A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp.*, supra. *Ekokotu v. Pizza Hut*, 205 Ga. App. 534, 537 (6) (422 SE2d 903) (1992).

Shierling's conclusion about the check, absent more evidence supporting that contention, is not sufficient to defeat summary judgment in light of Ragan's evidence. *Sullivan v. Fabe*, 198 Ga. App. 824, 826 (1) (403 SE2d 208) (1991); *Collins v. West Am. Ins. Co.*, 186 Ga. App. 851, 852 (3) (368 SE2d 772) (1988).

4. The dismissal of Shierling Construction Company was not error. As reflected above, Shierling was defended by Southern and the judgment paid by Southern, which is the real party in interest. *North Am. Life &c. Co. v. Riedl*, 209 Ga. App. 883 (434 SE2d 820) (1993); *Allman v. Hope*, 200 Ga. App. 137, 138 (407 SE2d 107) (1991).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED MARCH 17, 1994 —
RECONSIDERATION DENIED MARCH 31, 1994 — ▬▬▬▬▬▬

*Chambers, Mabry, McClelland & Brooks, Robert M. Darroch, Savell & Williams, Daniel N. Meyer, Carl W. McCalla III*, for appellants.

*Lokey & Bowden, Malcolm Smith, Peter K. Kintz, Freeman & Hawkins, Barry S. Noeltner, Michael J. Goldman*, for appellees.