## A99A0262. CASE v. RGA INSURANCE SERVICES et al.

(521 SE2d 32)

McMurray, Presiding Judge.

Patricia Case gave JOA Marine ("JOA") $500 toward the purchase of a ski boat during a January 1996 boat show in Atlanta, Georgia. When she went to JOA's place of business to complete the transaction on January 17, 1997, a JOA employee persuaded her at closing to pay Hanover Insurance Company ("Hanover") a $412 premium in exchange for insurance coverage for her new boat. Ms. Case signed a blank insurance application and a "bunch of" other papers at the closing and, later that day, orally completed this insurance application during a telephone interview with an employee of RGA Reinsurance Company ("RGA") — apparently an independent insurance agency. Ms. Case later received a Hanover insurance policy covering her boat, but she did not receive a copy of her insurance application.

Ms. Case's boat sank on Lake Lanier shortly after its maiden voyage. Upon investigating this loss, Hanover discovered that Ms. Case's adult daughter, Andrea Case, was residing with her mother when Ms. Case applied for coverage and that Andrea Case had been involved in an automobile collision and had received several traffic citations within five years before Ms. Case applied for insurance. Hanover denied Ms. Case's property damage claim based on these findings, alleging that she duped Hanover into insuring her boat by checking the "no" box next to the following question on her insurance application — "Has any member of the household had a motor vehicle

or boating accident or loss or been convicted of a moving violation within the past 5 years?"

Ms. Case brought an action against Hanover to recover under her policy and sued RGA for negligent submission of her insurance application, alleging that RGA's agent, Vicki Arnold, failed to record Ms. Case's disclosure that Andrea Case would likely be operating her boat. This appeal followed the trial court's order granting RGA's and Hanover's respective motions for summary judgment. *Held*:

1. Ms. Case contends that genuine issues of material fact remain as to the materiality of the inaccurate negative response on her insurance application. An incorrect statement in an insurance application will not prevent recovery under the policy unless the insurer, with knowledge of the true facts, would not in good faith have issued the policy, not have issued a policy in as large an amount or at the given rate, or would not have provided coverage with respect to the hazard resulting in the loss. *Pa. Life Ins. Co. v. Tanner*, 163 Ga. App. 330, 333-334 (293 SE2d 520). The only evidence in this regard, in the case sub judice, is Hanover's expert underwriter's affidavit that the company would not have issued Ms. Case an insurance policy "[h]ad Hanover been aware of the previous moving violations and automobile accident of Andrea Joyce Case. . . ." The problem with this statement is that such "opinion testimony is always a question of acceptance or nonacceptance on the part of the jury." *Pa. Life*, 163 Ga. App. 330, 334, supra. We take issue with the dissent's statement that we ignore "a long line of cases" (five panel decisions of the Court of Appeals of Georgia). The "opinion testimony" rule upon which we rely is not only based on this Court's factually indistinguishable decision in *Pa. Life*, but is grounded upon venerable Supreme Court of Georgia authority providing that "summary judgment can never issue based upon opinion evidence alone." *Ginn v. Morgan*, 225 Ga. 192 (2) (167 SE2d 393). In our view the dissent, without explanation, would ignore this rule and adopt a holding which provides that summary judgment must go to the insurer if the insurer's employee provides his employer with a favorable opinion in the requisite affidavit.

The test for materiality of a representation in an insurance application should not be based upon such procedural gaming, but must be grounded upon a weighing of whether the representation varied from the truth so as to substantially change the nature, extent, or character of the risk. *Preston v. Nat. Life &c. Ins. Co.*, 196 Ga. 217, 228-236 (26 SE2d 439). Although such factual scrutiny was avoided in *Sanders v. Southern Farm &c. Ins. Co.*, 174 Ga. App. 888 (332 SE2d 33), when this Court disregarded the "opinion evidence" rule and *mistakenly elevated the insurer's employee's prediction (as to what would have happened regarding coverage) into something other than opinion evidence*, we have no power in the case sub judice to

undo any resulting harm because, unlike *Sanders* and other decisions which may ignore the "opinion evidence" rule, there is proof in the case sub judice that Hanover placed no reliance on Ms. Case's insurance application. To this extent, it is undisputed that Hanover agreed to cover Ms. Case even though several questions in the insurance application, which were relevant to the risk of coverage, were left blank and a response in the insurance application indicated that Ms. Case's boat would be used for an unusually high risk activity. Specifically, the policy application's "UNDERWRITING INFORMATION" section indicates that Ms. Case's ski boat would be used for "racing" and the application's "SUPPLEMENTAL QUESTIONNAIRE" section was left completely blank. This section's inquiry concerns additional boat owners, the existence of a survey or statement as to the boat's condition, any prior damage, needed repairs or deterioration, the boat's last inspection date, the existence of kitchen or bathroom facilities on the craft, and the conditions under which the boat would be stored.

This Court affirmed a jury's verdict for the insured in *Pa. Life*, 163 Ga. App. 330, 334, supra, holding that similar policy application omissions authorized the jury's finding that any policy application misrepresentation was not material to the insurer's acceptance of the risk under the policy. For the same reasons, we find genuine issues of material fact as to whether Hanover actually relied on Ms. Case's insurance application before issuing her an insurance policy. The trial court therefore erred in granting Hanover's motion for summary judgment. If the movant for summary judgment fails to show an entitlement to a judgment as a matter of law, with the evidence viewed in favor of the non-moving party, a prima facie case has not been shown. *Dental One Assoc. v. JKR Realty Assoc.*, 269 Ga. 616, 617 (1) (501 SE2d 497).

2. Citing *Jackson Nat. Life Ins. Co. v. Snead*, 231 Ga. App. 406 (499 SE2d 173), cert. denied at 231 Ga. App. 908, Ms. Case contends that Hanover's insurance application's "yes" or "no" question regarding the boating and driving history of members "of the household" would authorize a jury's finding that the negative response in her application did not constitute a misrepresentation.[1]

---

[1] While the dissent correctly points out that this Court cannot consider arguments raised for the first time on appeal, we are not being asked to do so here. This enumeration of error instead questions the impact of a recent whole court decision which is relevant to an issue that was before the trial court, i.e., whether a response in Ms. Case's insurance application voided her policy of insurance. We address this enumeration of error because it is this Court's function on appeals from the grant of summary judgment to examine the record de novo and determine whether the allegations of the pleadings have been pierced so that no genuine issue of material fact remains. *Ga. Farm &c. Ins. Co. v. Shook*, 215 Ga. App. 66, 67-68 (449 SE2d 658).

In *Jackson Nat. Life*, supra, this Court adopted the general rule that answers to questions on insurance applications that are ambiguous and call for "yes" or "no" answers cannot be false as a matter of law. Id. at 410, 411 (4), supra. This holding is based on a deceased insured's negative responses to a life insurance application's questions regarding her status as a smoker. Because these questions were subject to interpretation based, in large part, on the application's requirement for nothing more than "yes" or "no" responses, this Court affirmed a jury's finding that the insured's negative responses regarding her prior use of cigarettes were not false or misleading — even though there was proof that the insured had possibly "slipped" a cigarette or two during the year preceding her insurance application. Id.

The insurance application question at issue in the case sub judice covers several matters regarding the boating and driving history of unspecified members "of the household." While it may be assumed that the term — "the household" — refers to Ms. Case's household (since she is charged with verifying the application), the question calls for a single "yes" or "no" response to a compound question and fails to identify the subjects of Hanover's inquiry, e.g., past, present, expected, short-term, or long-term members "of the household." Further, there is no question in the application which clarifies this ambiguity, nor is there proof that Hanover conducted an inquiry to straighten out this problem before it issued Ms. Case an insurance policy. Accordingly, any misunderstanding caused by the insurance application's question regarding a prior boating or driving history of "any member of the household" must be construed in Ms. Case's favor.

> The same rule of construing an insurance policy or bond strongly against the insurer and favorably to the insured applies to an application, or matters contained therein, as to the policy itself, the instrument having been prepared by the insurer. The insurance company is also under a duty to frame questions in the application so that they will be free from misleading interpretations. When it has failed to do so, an ambiguity or doubt arises, questions and answers thereto will be construed most favorably to the insured. 13A Appleman, Ins. Law & Practice, § 7585, pp. 254-256.

*Jackson Nat. Life*, 231 Ga. App. 406, 410, 411 (4), supra.

The trial court erred in granting Hanover's motion for summary judgment as summary judgment is authorized only when there is no remaining genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). See *Dental One*,

269 Ga. 616, 617 (1), supra. This holding renders it unnecessary to address Ms. Case's remaining arguments regarding the grant of Hanover's motion for summary judgment.

3. Ms. Case testified in her deposition that she informed RGA's agent, Vickie Arnold, during her telephone interview with Ms. Arnold, that her son and her daughter, Andrea Case, would also be operating the boat. Since there is no conclusive proof that RGA was Hanover's duly authorized agent acting within the prosecution of Hanover's business, Ms. Case's testimony raises genuine issues of material fact as to RGA's liability for negligently preparing and submitting Ms. Case's insurance application. Where an independent insurance agent endeavors to procure insurance for another and is negligent in his undertaking, he is liable for loss or damage to the limit of the agreed policy. *Beavers Ins. Agency v. Roland*, 135 Ga. App. 263 (217 SE2d 484).

The dissent's reliance on *James, Hereford & McClelland v. Powell*, 198 Ga. App. 604 (402 SE2d 348), is misplaced. As we view it, *Powell* holds that an insurance applicant cannot recover against the insurance agent for fraudulently inducing the insurer to cover the applicant because to do so would, in effect, provide the applicant with coverage that he would not have otherwise been able to acquire. Id. at 605 (1), supra. Ms. Case's claim against RGA is not based on fraud, but is based on RGA's alleged negligence in failing to complete and prepare her insurance application. The difference is that proper preparation of the policy application in the case sub judice would have, at the very least, alerted Ms. Case to the alleged significance of her daughter's driving record and the need to negotiate coverage for this risk. The dissent's view that the record evidence demands a finding that Ms. Case's boat was not insurable is not only inaccurate, but is unrealistic.

*Judgment reversed. Johnson, C. J., Pope, P. J., Smith, Ruffin and Eldridge, JJ., concur. Andrews, P. J., concurs specially in part and dissents in part.*

ANDREWS, Presiding Judge, concurring specially in part, and dissenting in part.

I agree the trial court erred in granting summary judgment to Hanover, but not for the reasons stated in the majority's opinion. I disagree with the majority's conclusion that the trial court erred in granting summary judgment to RGA.

1. In Division 1, the majority ignores a long line of cases holding that the uncontroverted affidavit of the insurance company stating that it would not have issued the policy had the question on the application been answered truthfully is enough to sustain summary judgment. In Hanover's motion for summary judgment, it claimed

that due to a material misrepresentation on the application it was entitled to deny recovery under the policy. Hanover relied on OCGA § 33-24-7 which provides that misrepresentations and concealment of facts on an application for insurance shall not prevent a recovery under the policy unless they are (1) fraudulent; (2) material either to the acceptance of the risk or to the hazard assumed by the insurer; or (3) the insurer either would not have issued the policy or would not have issued the policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss if the insurer had known the true facts. Hanover submitted the affidavit of the director of underwriting, stating that if Hanover had known about Andrea Case's driving record, the company would not have issued the policy.

In *Sanders v. Southern Farm &c. Ins. Co.*, 174 Ga. App. 888 (332 SE2d 33) (1985), this Court held that the affidavit of the vice-president of underwriting stating that the insurer would not have issued the policy if the application had been truthfully completed, was sufficient to sustain the grant of summary judgment to the insurance company. Id. at 889. Accord *Celtic Life Ins. Co. v. Monroe*, 220 Ga. App. 38 (467 SE2d 360) (1996); *Hopkins v. Life Ins. Co. of Ga.*, 218 Ga. App. 591 (462 SE2d 467) (1995); *Taylor v. Ga. Intl. Life Ins. Co.*, 207 Ga. App. 341 (427 SE2d 833) (1993); *Davis v. John Hancock &c. Ins. Co.*, 202 Ga. App. 3, 5-6 (413 SE2d 224) (1991). Further, whether or not the applicant acted in good faith in completing the application is immaterial. *Hopkins*, supra at 593; *Taylor*, supra at 342. It is likewise immaterial that the loss was occasioned by an unrelated cause concerning which there was no misrepresentation. *Hopkins*, supra at 593.

The one case cited by the majority in support of its holding that the affidavit is not enough, *Pa. Life Ins. Co. v. Tanner*, 163 Ga. App. 330 (293 SE2d 520) (1982), involved an affidavit by an underwriter stating that "it was the policy of the insurance company to participate in life insurance coverage in a sum no greater than 10 to 12 times the annual earned income of the insured." Id. at 334. This is not the same as stating unequivocally that the company would not have issued the policy if the application were truthfully completed, and does not warrant ignoring the long line of cases cited above.

The trial court, in granting Hanover's motion for summary judgment, concluded that because Case signed the application in blank and authorized the agent to complete the application for her, she was therefore bound by it. As shown by the cases discussed above, that is not the law.

Moreover, the case relied on by the trial court, *Southern Guar. Ins. Co. v. Ragan Ins. Agency*, 212 Ga. App. 690 (442 SE2d 871) (1994) is not applicable. The issue in that case did not involve an application

for insurance filled out by an agent according to answers given him by the insured, and the document signed in blank was a financing application. Id. at 692.

But, Case argues on appeal that Hanover is estopped from denying coverage where the agent, either through fraud or negligence has filled in the application incorrectly. I agree.

Here, the application required the applicant to "State all Operators." Case's uncontradicted testimony is that she told the agent that her son, daughter and daughter's fiancé would be operating the boat. Hanover denied Case's claim because she did not list her daughter as an operator of the boat.

The other question at issue on the application was: "Has any member of the household had a motor vehicle or boating accident or loss or been convicted of a moving violation within the past 5 years?" The answer "no" was checked on the application. At her deposition, Case was asked if she had a moving violation within three years of the application and she replied, "no. . . ."

Q Okay. So that is, then, correct as far as you? [sic]

A Yes, and it would have been correct for my children, too, because I didn't know of any violations they had.

Q I thought you told me you were aware of two that she had. Are you saying they were beyond the three-year mark?

A After USAA told me that they would not cover because of her two — her — they didn't even tell me "speeding." I think they said because of her vehicle report, and then I asked — I confronted my daughter with it, and she told me she had had two speeding tickets. This is after USAA had declined me insurance because of my daughter's driving record. That's when I confronted my daughter with it, and she told me she had had two speeding tickets.

Q When you spoke on the phone with the agency, and she asked you who were going to be the operators, you told her you were primary and your son and daughter and her fiancé. Is that your testimony?

A Yes.

Q Did the lady then ask you about moving violations in the last three years for any or all of those people?

A She was reading these questions to me. I didn't have this in front of me, so I can't remember verbatim what she asked me as far as moving violations.

Q I only want you to tell me what you remember. Is it your

testimony that you do not remember whether or not she asked you about violations?

A She must have asked me and I said no, but — I was not aware of any violations.

Q Okay. So if I understand you correctly, she did ask you about violations, and you said no, and as far as you knew then, that was correct[?]

A Yes, that's correct.

Case later submitted an affidavit in which she amplified and explained her answers to these questions, stating that the agent read the questions to her over the phone, she did not have a copy of the questions in front of her, she did not remember verbatim what the agent asked her, she speculated that the agent must have asked her the question about the moving violations, but she honestly could not recall whether the agent asked her or not.

*Liberty Nat. Life Ins. Co. v. Houk*, 248 Ga. 111 (281 SE2d 583) (1981) is on point and supports Case's argument that Hanover is estopped from denying coverage. In *Houk*, the insured signed the application after the agent had filled in the answers but did not notice that the answers were marked incorrectly. Here, Case never saw the application and was not sent a copy of the application until after the accident with the boat.

The court in *Houk* relied on *Stillson v. Prudential Ins. Co. of America*, 202 Ga. 79 (42 SE2d 121) (1947) which also held the insurance company was estopped from denying coverage when the agent took down the answers untruthfully. In *Stillson*, the agent took down the answers for the insured and gave the insured the application to sign, covering the application with his hands, except for the signature line. The court held that if the insured was deceived by the agent and was ignorant that the application contained false answers, the insurance company was estopped from seeking to avoid liability on the policy. Id. at 83.

Likewise, in *Tallent v. Safeco Ins. Co. of America*, 99 Ga. App. 11 (107 SE2d 331) (1959), this Court reversed the trial court's grant of a directed verdict for the insurance company. In that case, the company's agent testified that she asked the plaintiff all the questions on the application for car insurance and filled out the answers in pencil. Then, in order to have a neater application, she had the plaintiff sign a blank application and typed in the answers contained in the pencil-written application.

The plaintiff testified that the only question the agent asked him was whether any person under the age of 25 would be driving the automobile. This Court held that if the jury had believed plaintiff's

version of events it would be authorized to find in favor of the plaintiff. Id. at 12. Moreover, the plaintiff was under no duty to examine the copy of the application he took to the bank because he was entitled to rely on the agent's filling out the application correctly. Id. at 13.

It is true that: "An applicant is prima facie charged with knowledge of the contents of an application signed by him, but this may be rebutted." *Jessup v. Franklin Life Ins. Co.*, 117 Ga. App. 389, 391 (2) (160 SE2d 612) (1968).

> With regard to whether one who signed the application may escape the consequences of an agent inserting untruthful answers therein, some of the cases have enunciated the principle that: Where an application is signed in blank and authority given by applicant to the agent of the company to fill out the application from information given him, any false answers inserted in the application, which is attached to and made a part of the policy issued, unless inserted by a misleading device or artifice perpetrated by such agent, will be binding on the applicant.[2]

(Citation and punctuation omitted.) *O'Kelly v. Southland Life Ins. Co.*, 167 Ga. App. 455, 456 (305 SE2d 873) (1983).

In *O'Kelly*, the plaintiff's wife signed a blank application, and the life insurance company tried to deny coverage after she died, claiming that the application contained false answers to some questions which were material to the risk involved in issuing the insurance. Id. at 455. The court in *O'Kelly*, after acknowledging the above-quoted rule concerning applicants who sign a blank application, then went on to cite *Houk*, supra, *Stillson*, supra, and *Tallent*, supra, among others, and concluded that the insurance company was not entitled to summary judgment under these holdings. *O'Kelly*, supra at 458.

Likewise, in *Browning v. Davis*, 167 Ga. App. 393 (306 SE2d 40) (1983), the insured argued that the agent never asked him whether he had previous fire losses within the past three years. The agent contended the question was asked, answered and correctly recorded. Therefore, this Court held the issue should have been submitted to a jury for determination. Id. at 395.

---

[2] As previously stated, neither Hanover nor RGA ever sent Case a copy of the application. We agree with Hanover that there is no requirement that the application be made a part of the policy except where the policy is one for life insurance. OCGA § 33-25-2. That, however, is not the issue. Hanover cannot cite life insurance company cases in support of its position, and then argue that they were not required to attach a copy of the application to the policy.

Here, there is no evidence from the agent as to whether or how she asked the questions and whether she filled in the answers correctly. Hanover and RGA do not dispute on appeal that the application was incorrectly filled out. Case's uncontradicted deposition testimony is that she told the agent that there would be other operators; namely, her son, daughter and daughter's fiancé. Case does not remember answering the question about moving violations of other members of her household, or even whether the agent asked her about the violations of other members of the household.

Therefore, construing the evidence in the light most favorable to Case as nonmovant, there is enough evidence that material misrepresentations were made to raise an issue as to whether the agent negligently or fraudulently completed the application. Thus, there is a jury issue as to whether or not Hanover was estopped from denying coverage on the boat. The trial court erred in granting Hanover's motion for summary judgment.

2. I cannot join in Division 2 of the majority's opinion because this issue was never raised in the trial court. Case never stated, either in her deposition or her affidavit, that she did not understand the term "household" as it was used in the insurance application. Indeed, her deposition testimony as set out above, is the only instance where the question is discussed, and Case's answer clearly shows that she understood the meaning of the word "household." Moreover, on appeal, Case does not point to, nor do we find, anywhere in the record which shows this issue was before the trial court.

Issues presented for the first time on appeal present nothing for us to review. This is a court for the correction of errors at law committed by the trial court where proper exception is taken. *Angell v. Hart*, 232 Ga. App. 222, 223 (2) (501 SE2d 594) (1998). Therefore, we cannot consider this argument on appeal.

3. I dissent to the majority's conclusion in Division 3 that RGA is not entitled to summary judgment. This Court has consistently held that while the insured may have a cause of action against the insurer for coverage, there is no authority that an applicant may recover from the agent for fraud in making material misrepresentations to induce an insurer to provide coverage which the applicant could not otherwise obtain.[3]

Therefore, the one injured due to the misrepresentations on the application is the insurance company, not Case, who was the benefi-

---

[3] Although Case stated in her affidavit "I could have called other insurers and obtained coverage but I did not believe that was necessary," this is not evidence that Case could have procured other insurance. The only evidence before us is that neither USAA, Case's automobile insurance company, nor Hanover, would have insured the boat due to the driving records of Case's children.

ciary of the alleged fraud or negligence.[4] *James, Hereford & McClelland v. Powell*, 198 Ga. App. 604, 606 (402 SE2d 348) (1991). Accord *Bolin v. Mass. Indem. & Life Ins. Co.*, 203 Ga. App. 570, 573 (3) (417 SE2d 325) (1992). See also *Garrett v. Life Ins. Co. of Ga.*, 221 Ga. App. 315, 320 (471 SE2d 262) (1996).

The cases cited by plaintiff are not to the contrary. In *BSF, Inc. v. Cason*, 175 Ga. App. 271 (333 SE2d 154) (1985), decided before *Powell*, the agent appealed following a trial, claiming no expert evidence was introduced establishing the standard of care followed in the insurance industry and whether the agent deviated from this standard. Therefore, this Court was presented with a different issue on appeal than the one before us in this case. Id. at 272-273. Likewise, in *Charles Parrott & Assoc. v. Hunt*, 167 Ga. App. 106 (305 SE2d 879) (1983), the claim against the agent was for failure to notify the insurance company to add coverage for a trailer destroyed in a wreck. Id.

The only case cited by the majority, *Beaver Ins. Agency v. Roland*, 135 Ga. App. 263 (217 SE2d 484) (1975), is not applicable. That case holds that an independent insurance agent is personally liable for a breach of contract to procure insurance. Id. Therefore, in light of the above, the trial court did not err in granting RGA's motion for summary judgment.

DECIDED JULY 8, 1999 ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Kristopher Shepherd*, for appellant.

*Mozley, Finlayson & Loggins, Robert M. Finlayson II, Edward C. Bresee, Lokey & Smith, Malcolm Smith, Jon W. Burton*, for appellees.

---

[4] Hanover files a cross-claim against RGA for indemnification; however, that issue is not before us in this appeal.